Filed 10/27/21  In re Johnny G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In the matter of JOHNNY G. and SUREYA L., Persons Coming Under Juvenile Court Law. | B308206 (Los Angeles County Super. Ct. No. 20CCJP03154B and 20CCJP03154D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ALEX G. and ANWAR L., Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Dismissed in part; reversed in part.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant Alex G.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant Anwar L.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————

Rocio H. has four children: 14-year-old Isabel F., five-year-old Sureya L., seven-year-old Imaya-Lily H., and nine-year-old Johnny G. Each of the four children has a different father.

Johnny's father Alex G. appeals from the juvenile court's jurisdiction finding he failed to provide the necessities of life for Johnny. Alex does not challenge the court's jurisdiction findings as to Rocio, and Rocio does not appeal the findings. We therefore dismiss Alex's appeal as nonjusticiable.

Sureya's father Anwar L. appeals from the juvenile court's disposition order denying his request for custody of Sureya as a noncustodial parent pursuant to Welfare and Institutions Code section 361.2, subdivision (a),[1] after she was removed from Rocio's custody. Anwar contends substantial evidence does not support the court's finding that placing Sureya with him would

_____

[1] All further references are to the Welfare and Institutions Code.

2

be detrimental to her physical or emotional wellbeing. We agree and reverse the disposition order.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Prior Dependency Referrals*

From March 2007 to May 2020 there were nine referrals to the Los Angeles County Department of Children and Family Services (Department) involving Rocio or Anwar. The Department found seven of the referrals were inconclusive, unfounded, or "evaluated out."[3]

However, in June 2012 an allegation of Rocio's general neglect of Isabel and Johnny was substantiated. In April 2015 the juvenile court sustained a petition alleging Anwar's domestic violence against Rocio in the children's presence; Anwar's history of substance and alcohol abuse; and Rocio's failure to protect the children. The juvenile court ordered Anwar to participate in a full alcohol program with aftercare, random or on-demand drug and alcohol testing, a 12-step program with court card and sponsor, a 52-week domestic violence program, and parenting classes. The juvenile court also ordered Alex to participate in

---

[2]      Rocio and the fathers of Isabel and Imaya-Lily have not appealed.

[3]      The term "evaluated out" means "the child protective services screener did not find sufficient evidence of physical abuse or child abuse and neglect to assign the referral to an investigation." (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1149, fn. 4.)

individual counseling to address parenting and case issues.[4]  The court ordered reunification services for Anwar and Alex.

Anwar and Alex failed to contact the Department and did not provide proof of participation in court-ordered services.  Rocio stated she obtained a restraining order against Anwar in 2016 and she had no contact with him.  Alex was living in Arizona and talked to Johnny by phone one to two times a week.  Rocio added that Alex sent clothes to Johnny (although Alex later stated he did not).  Neither Anwar nor Alex reunified with his respective child; in May 2016 the court granted Rocio sole legal and physical custody of Johnny, Sureya, and Imaya-Lily.[5]

B.    *The Current Referrals and Investigation*

On May 18, 2020 the Department received a referral alleging Rocio was in a new relationship with Anthony T., who was a member of a Long Beach gang.  The reporter stated Anthony had moved into the family's home, and Rocio and Anthony were using methamphetamine and engaging in physical fights in the children's presence.  Three weeks earlier Rocio and Sureya were in a car accident in which Sureya was injured, and Rocio refused to take Sureya to receive medical care.

On May 22 the Department received another referral, reporting Rocio had contacted the police after a dispute between her and Anthony about her alleged cheating.  Anthony grabbed a knife and held it, but he did not threaten Rocio.  Anthony threw

---

[4]    The record does not reflect the reason for the requirement Alex participate in individual counseling.

[5]    In November 2015 the juvenile court granted joint legal and physical custody to Rocio and Isabel's father, with Isabel's father providing the primary residence.

4

several objects at Rocio's back, including Rocio's phone.  Johnny, Sureya, and Imaya-Lily witnessed the incident but were not injured.

On May 26 a social worker made an unannounced visit to Rocio's home.  The social worker observed the house was messy and dirty but was stocked with food, and all utilities were in working order.  The children slept on bunk beds in the living room, and Rocio slept on a twin bed in the only bedroom.

Anthony did not live in the home.  When he arrived at the residence, he explained he and Rocio argued often, but they did not do so in front of the children.  Anthony smoked marijuana and occasionally used cocaine.  When Anthony left, Rocio stated Anthony initiated fights and threw objects at her, including on May 22 when Anthony grabbed a knife, causing her to call the police.  But he never hit her.  Rocio admitted to smoking cannabis oil in a vape pen, but she denied using other drugs.

Rocio stated she has been diagnosed with posttraumatic stress disorder, depression, and bipolar disorder, and she had been prescribed medication.  But she had not been taking her medication because Anthony removed it to keep Rocio from harming herself.  Rocio stated the children were supervised at all times, had plenty of food to eat, and were up to date on their physical examinations and immunizations.  Rocio reported Alex was in Arizona, and she believed Anwar was in Oklahoma.

The social worker interviewed Johnny, Sureya, and Imaya-Lily.  Johnny was clean, neatly groomed, and properly dressed.  He stated he had witnessed Anthony hit Rocio on May 22, and Anthony and Rocio fight every day.  Johnny did not like living at home because "there's a lot of drama going on and it smells bad and people from the apartments are mean to [his] mother," but

he felt safe in his home. He reported he is left unsupervised in the home, but "almost always" has enough food to eat.

Sureya was "very dirty" and dressed in pajamas with multiple stains. She stated her mother and Anthony were "always fighting and then get along again." Sureya also reported she is left unsupervised with her siblings at home, and she "sometimes goes a couple of days without eating." Sureya could not recall when she last took a shower. Sureya did not like living in the home, but she felt safe.

Imaya-Lily was wearing dirty clothes with stains. She was preverbal and could not provide any information to the social worker. According to Rocio, Imaya-Lily was diagnosed with a disorder that caused her to be developmentally delayed.

Rocio agreed to take a drug test that day, which was positive for methamphetamine, amphetamine, and marijuana. Rocio stated she did not "'know how [the test] came out positive if the last time [she] used was 5/20/20.'"

C.    *The Petition and Detention Hearing*

On June 11, 2020 the Department filed a petition on behalf of all four children under section 300, subdivisions (a) and (b)(1). The petition alleged Rocio and Anthony had a history of engaging in violent altercations in the children's presence and Rocio failed to protect the children by allowing Anthony to frequent the home and have unlimited access to the children. Further, Rocio had a history of illicit drug use and was a current user of methamphetamine, amphetamine, and marijuana. Rocio tested positive for all three substances on May 26, 2020 and was under the influence of the drugs while the children were in her care. In addition, Rocio failed to protect the children from Anthony, who

6

abuses cocaine and marijuana. The petition also alleged the children were prior dependents of the juvenile court due to domestic violence between Rocio and Anwar. The petition alleged Rocio's conduct endangered the children and placed them at risk of serious physical harm.

At the June 18 detention hearing, the juvenile court found Alex and Anwar were the presumed fathers of Johnny and Sureya, respectively. The court detained the children and removed them from Rocio's custody.

D. *The Jurisdiction and Disposition Report*

As of the June 29, 2020 jurisdiction and disposition report, Johnny, Sureya, and Imaya-Lily were living with the maternal grandmother. Alex's and Anwar's whereabouts were still unknown.

Anwar had been arrested for driving under the influence in 2009 and 2013 and inflicting corporal injury on a spouse and violating a protective order in 2015. Alex had no reported criminal history.

Johnny told the dependency investigator he had telephone contact with Alex in the beginning of 2020, at which time Alex said he was living in Arizona. Johnny denied knowing anything else about Alex and added that Alex had "not bought him anything." Johnny said he would like to meet his father. He added that Anwar lived in Oklahoma, but Johnny did not know anything else about him. When the dependency investigator asked Sureya about Anwar, Sureya "was unable to provide a statement."

The children's maternal grandmother and maternal aunt told the dependency investigator the children's fathers did not

7

provide for their children. Rocio had previously stated similarly that the fathers "have never provided for the kids . . . . I took care of my kids by myself."

E. *The Amended Petition*

On June 30, 2020 the Department filed a first amended petition, adding allegations that Alex and Anwar failed to provide Johnny and Sureya, respectively, the necessities of life, including food, clothing, shelter, and medical care, which endangered the children's physical and emotional health and wellbeing.

F. *Last Minute Information for the Court*

The Department filed multiple last minute information reports for the court containing additional information from interviews with Alex and Anwar.

On July 15, 2020 the dependency investigator interviewed Alex by telephone. Alex was living in Arizona and had last seen Johnny nine years earlier. According to Alex, Rocio "'kept [Johnny] away and she never told [Alex] where she was living. She kept moving.'" Alex admitted he never paid child support or provided financially for Johnny. He told Rocio "'to send [him Johnny's] sizes so [he] can send him clothing and shoes,'" but "'[o]ne of her friends told me not to send her money'" because she was using drugs, and he did not want Rocio to use the money for drugs. Alex spoke with Johnny before the May 22, 2020 incident, but Johnny did not disclose what was going on at home. Alex understood that in the prior dependency case he was given reunification services and the court ordered an Interstate Compact on the Placement of Children (ICPC) evaluation, but he failed to provide for or visit Johnny or to reunify with him. The

8

ICPC was closed because the Department had concerns about Alex's ability to provide a safe and stable environment for Johnny.

Alex indicated he would like to visit Johnny in person, but he had not been traveling because of the COVID-19 pandemic. On July 29, 2020 Alex and Johnny had a virtual visit, and according to Alex, "'it was so awesome and we laughed so much.'" Alex stated he and his fiancée were making plans to visit Johnny in August 2020. Alex expressed a desire to reunify with Johnny and stated he would cooperate with the Department in order to do so.

On September 29, 2020 the dependency investigator interviewed Anwar by telephone. Anwar was living in Oklahoma. He stated he had not provided for Sureya because he did not know where she was, and Rocio kept changing her phone number. If Anwar knew where they were, he could have provided for Sureya. Anwar said Sureya knows that he is her father, and he was caring for her when he lived in California. Anwar moved to Oklahoma from California in November 2018, which was the last time he saw Sureya. At that time Anwar was homeless. He moved to Oklahoma to be with his mother after his father passed away. At the time of the interview, Anwar had his own home and was collecting unemployment benefits due to the pandemic. He had previously worked as a grocery store manager.

Anwar explained as to his failure to reunify with Sureya in 2015, "'I was not given the opportunity. Rocio put me in jail and when I came out, it was too late. I was doing my classes. I was going to parenting classes, but then I had to stop going, because they said we couldn't do them together. We were arguing in the classes, so I let her do them alone and she sent me to jail. I didn't

9

hit her. She would hit me.'" The dependency investigator reminded Anwar that he had over a year to complete his plan, which was his responsibility. But Anwar continued to blame Rocio, the social worker, and his attorney for his lack of compliance. Anwar admitted he had failed to complete his classes for driving under the influence in 2016.

Anwar expressed a desire to reunify with Sureya. He stated he has been sober for two years and was willing to submit to drug and alcohol testing. Anwar acknowledged that prior to the jurisdiction hearing he was aware of Rocio's drug and alcohol problem, as well as the physical violence between Rocio and Anthony, but he had not taken any steps to protect Sureya.

Anwar provided to the dependency investigator a domestic violence program completion letter dated October 1, 2020 showing Anwar had enrolled in the program in February 2016 and completed a 52-week "comprehensive program" in early 2017. The counselor wrote Anwar "mastered our positive conflict resolution exercise. His participation, performance and progress was outstanding." Anwar also submitted a signature page from an Alcoholics Anonymous program showing Anwar had attended 13 meetings in September and October 2020.

G.    *The Jurisdiction and Disposition Hearings[6]*
        1.    *Alex*

At the October 5, 2020 jurisdiction and disposition hearing, Johnny's counsel and the Department argued the allegation as to Alex should be sustained, noting Alex had known for 10 years of Rocio's drug and alcohol abuse, but he failed to provide for Johnny's care and supervision.  In addition, Alex failed to reunify with Johnny in the prior dependency case.  Alex's attorney requested Johnny be placed with Alex, noting the 2015 custody order gave Rocio sole legal and physical custody over Johnny, which limited Alex's ability to provide support for him.  Further, Rocio provided food and care for the children, and she prevented Alex from finding her, even though he told her wanted to provide clothing for Johnny.

The juvenile court sustained the allegation Alex had failed to provide the necessities of life for Johnny.  The court stated in support of this finding, "[T]hese children have experienced mental health issues.  They have been exposed to drug use by the mother's extensive substance abuse history.  They have been subjected to domestic violence.  They have resided in shelters at one time, and the grandmother has provided some care, but indicates the mother has been neglectful."

As to disposition, the court found that return of Johnny to Alex, who was the noncustodial parent, "would be detrimental to Johnny's safety, protection, [and] physical and emotional well being."  The court explained that Johnny "has not seen his father

_____

[6]    On July 9, 2020 the juvenile court sustained the allegations in the amended petition on all counts as to Rocio.  The court bifurcated the hearing as to Alex and Anwar because as of July 9 their whereabouts were still unknown.

11

and can't recall having met his father. He is currently placed with his siblings and Johnny does not want to be separated from them." The court ordered the Department to provide Alex with family reunification services and monitored visitation. In ordering monitored visitation, the court noted Alex had not previously completed his case plan. The court ordered Alex to complete parenting classes and individual counseling and to provide five random drug tests.

Alex timely appealed.

2. *Anwar*

On November 2, 2020 the juvenile court held the continued jurisdiction and disposition hearing for Anwar. Counsel for Sureya requested the allegation, as amended, be sustained against Anwar, pointing out that Anwar had not seen Sureya since November 2018, Anwar failed to reunify with Sureya in 2015, and despite knowing about Rocio's drug and alcohol problem and the domestic violence between Rocio and Anthony, Anwar failed to do anything to protect Sureya. The Department joined, adding the petition also should be sustained based on Anwar's criminal record and his failure to complete his driving-under-the-influence classes in 2016. The Department's attorney also noted Anwar did not contact the Department until the end of September 2020, although notice of the dependency proceeding was mailed to him on June 23, 2020 at the address Anwar later confirmed was correct.

Anwar's counsel argued Anwar should be found nonoffending given that Rocio "pretty much cut him out of the child's life." Anwar was residing out of state and would have been able to have a relationship with and support Sureya if he

12

knew where she was. Anwar requested Sureya be released to him because the Department failed to meet its burden to show by clear and convincing evidence that placement with him would be detrimental to Sureya.

The juvenile court sustained the allegation in the petition that Anwar failed to provide the basic necessities of life to Sureya. As to disposition, the court found Anwar was the noncustodial parent but it would be detrimental to place Sureya with him because "he has had no contact with his daughter in two years."[7] Sureya's counsel added that Sureya was not requesting to be placed with Anwar. The court made an additional finding that "Sureya is part of a sibling group, and does not wish to be relocated to Oklahoma."[8]

---

[7] The court also noted Sureya had special needs, but Sureya's counsel corrected the court, stating it was Imaya-Lily, not Sureya, who had a severe disability.

[8] The November 2, 2020 minute order states the juvenile court found "by clear and convincing evidence, pursuant to Welfare and Institutions Code sections 361(a)(1), 361(c), 361(d) and 362(a)" that it was reasonable and necessary to remove Sureya from Anwar's custody, and "it would be detrimental to the safety, protection, or physical or emotional well-being, and special needs, if applicable, of the child to be returned to" Anwar. Although the minute order cites the wrong code provision (referring to removal from Anwar), it appears from the transcript that the court made a finding of detriment pursuant to section 361.2, subdivision (a), that placement of Sureya with Anwar as the noncustodial parent would be detrimental to Sureya's safety, protection, or physical or emotional wellbeing.

13

Anwar was granted three monitored visits a week for three hours each visit or an equivalent amount of time given that Anwar resided out of state. The court also ordered an ICPC evaluation for Anwar. The court ordered Anwar to participate in conjoint counseling with Sureya once her counselor deemed it appropriate to do so, attend parenting classes, and submit to on-demand drug and alcohol testing.

Anwar timely appealed.

H. *The Return of the Children to Rocio*

On January 6, 2021 the juvenile court found that Rocio had made substantial progress in alleviating the causes necessitating removal of Johnny and Sureya from her custody.[9] Finding release of the children to Rocio's care would not create a substantial risk of detriment to the children, the court terminated the suitable placement order and ordered Johnny and Sureya returned to Rocio's custody.

**DISCUSSION**

A. *Alex's Appeal from the Jurisdiction Finding Is Nonjusticiable*

Alex appeals from the jurisdiction finding that he failed to provide the necessities of life for Johnny, arguing substantial evidence does not support the juvenile court's finding that Johnny was at risk of harm because notwithstanding Alex's lack of support, Johnny was otherwise a well-cared-for child.

---

[9] On our own motion, we take judicial notice of the January 6, 2021 minute orders issued in Johnny's and Sureya's cases. (Evid. Code, §§ 452 subd. (d), 459, subd. (a).)

14

However, Rocio does not appeal the jurisdiction findings, and Alex does not contest the jurisdiction findings against Rocio.  As Alex acknowledges, citing *In re I.J.* (2013) 56 Cal.4th 766, 773, "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.'"  (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 (*I.A.*) ["[I]t is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child."].)  However, Alex urges us to exercise our discretion to review the jurisdiction finding against him.  We decline to do so.

An appeal is not justiciable where "no effective relief could be granted . . . as jurisdiction would be established regardless of the appellate court's conclusions with respect to any such [challenged] jurisdictional grounds."  (*In re Madison S.* (2017) 15 Cal.App.5th 308, 329; accord, *I.A., supra*, 201 Cal.App.4th at 1490 ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status."].)  Nevertheless, the appellate "[c]ourts may exercise their 'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction." [citation].'"  (*In re D.P.* (2015)

15

237 Cal.App.4th 911, 917, quoting *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*); accord, *In re Madison S., supra*, 15 Cal.App.5th at p. 329; *In re J.C.* (2014) 233 Cal.App.4th 1, 4.)

Alex is correct that we and other appellate courts have exercised discretion to review jurisdiction findings where the outcome of an appeal could mean the difference between a parent being "'offending'" versus "'nonoffending,'" which could "'have far-reaching implications with respect to future dependency proceedings . . . and [his] parental rights.'" (*Drake M. supra*, 211 Cal.App.4th at p. 763; see *In re Andrew S.* (2016) 2 Cal.App.5th 536, 548, fn. 2 [exercising discretion to consider father's challenge to jurisdiction finding where finding could impact whether children should be placed with father as noncustodial parent]; *In re Quentin H.* (2014) 230 Cal.App.4th 608, 610, 613 [exercising discretion to consider father's challenge to jurisdiction finding based on presumption under section 355.1, subdivision (d), that father posed a substantial risk of harm to children based on father's 25-year-old sexual abuse conviction, where children were removed from father's custody and placed with mother because jurisdiction finding that father was offending parent could have far-reaching consequences]; *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1317 [jurisdiction finding that incarcerated father did not provide necessities of life to child could impact whether child should be placed with father upon his release as noncustodial parent under section 361.2, subdivision (a)].)

In this case, Alex has not identified any specific consequences that may result from the jurisdiction finding, only asserting "[t]his Court should exercise its discretion to review this matter now." This conclusory request for us to exercise our

discretion is not sufficient to support justiciability. (See *I.A.,*
*supra*, 201 Cal.App.4th at p. 1493 [declining to exercise discretion
to review jurisdiction finding where "Father has not suggested a
single specific legal or practical consequence from this finding,
either within or outside the dependency proceedings"]; see also *In*
*re J.C., supra,* 233 Cal.App.4th at p. 4 [father forfeited
justiciability argument because "[a]lthough father contends that
the *Drake M.* exceptions apply here, he does not explain why,
meaning he has not suggested any legal or practical consequences
that might flow from this finding either within or outside the
dependency proceedings"].)

Further, the record does not show specific future
consequences the jurisdiction finding may have on Alex's
parental rights or on future dependency proceedings.
Significantly, Alex does not challenge the disposition order on
appeal, and as discussed, Johnny has been returned to Rocio's
custody. Nor is the jurisdiction finding likely to affect "any future
dependency proceeding, [because] a finding of jurisdiction must
be based on current conditions" and "present detriment" to the
child. (*I.A., supra,* 201 Cal.App.4th at p. 1495.)

B.    *The Juvenile Court Erred in Denying Anwar Custody of*
      *Sureya under Section 361.2, Subdivision (a)[10]*
      1.    *Governing Law and Standard of Review*
"Section 361.2, subdivision (a) requires a court ordering
removal of a child first to determine whether there is a

---

[10]    Although Sureya was returned to Rocio, the Department
does not argue the appeal is moot. We note that if the case
proceeds to a hearing on termination of parental rights, the
juvenile court could consider the detriment finding against

17

noncustodial parent who wants to assume custody. The court shall place the child with that parent, unless that placement would be detrimental to the child's safety, protection, or physical or emotional well-being." (*In re A.C.* (2020) 54 Cal.App.5th 38, 42; accord, *In re K.B.* (2015) 239 Cal.App.4th 972, 979.) "Section 361.2 'evidences "the Legislative preference for placement with [the noncustodial] parent"'" when the placement is safe for the child. (*In re K.B.,* at p. 979; see *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1505 ["Under section 361.2, subdivision (a), the court focuses on the effect placement with the noncustodial parent would have on the child's safety, protection and physical and emotional well-being."].)

In making a finding of detriment under section 361.2, subdivision (a), "the court weighs all relevant factors to determine if the child will suffer net harm." (*In re A.C.*, *supra*, 54 Cal.App.5th at p. 43.) A finding of detriment must be made by clear and convincing evidence. (*Ibid.*; *In re John M.* (2006) 141

---

Anwar under section 361.2, subdivision (a), as a factor weighing in favor of termination of Anwar's parental rights. (See § 366.26, subd. (c)(1); *In re A.G.* (2020) 58 Cal.App.5th 973, 993 ["'certain prior findings by the juvenile court (e.g., that returning the child to the physical custody of the parent would create a substantial risk of detriment to the physical or emotional well-being of the child) shall constitute a sufficient basis for the termination of parental rights unless the juvenile court finds one of six specified circumstances in which termination would be detrimental [to the child]'"]; *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829 ["[s]hould the court fail to place the child with the noncustodial parent, the stage is set for the court to ultimately terminate parental rights"].)

Cal.App.4th 1564, 1569, 1571 (*John M.*).) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262; accord, *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.)

"[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1005; accord, *In re I.R.* (2021) 61 Cal.App.5th 510, 520; *In re V.L.* (2020) 54 Cal.App.5th 147, 155.)

2. *Substantial Evidence Does Not Support the Juvenile Court's Detriment Finding Under Section 361.2, Subdivision (a)*

Anwar contends the record does not contain substantial evidence to support the juvenile court's finding it would be detrimental to place Sureya with him pursuant to section 361.2, subdivision (a). The juvenile court relied on three factors in making its finding of detriment: the absence of contact between Anwar and Sureya for two years; Sureya's desire not to relocate to Oklahoma; and that "Sureya is part of a sibling group" and did not wish to be separated from her siblings. We agree with Anwar substantial evidence did not support the court's findings on the second and third factors, leaving only the finding Anwar had not seen Sureya in two years. This factor alone was not sufficient to support the court's finding of detriment.

19

An "'alleged lack of a relationship between father and [a child] is not, by itself, sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a).'" (*In re Adam H.* (2019) 43 Cal.App.5th 27, 33 [evidence that father had been absent from 14-year-old child's life for nine years and did not know him well was not sufficient to support implied finding of detriment under section 361.2, subdivision (a)]; see *John M., supra*, 141 Cal.App.4th at p. 1570 [substantial evidence did not support finding of detriment under section 361.2, subdivision (a), even though almost-14-year-old child lacked a relationship with father, father lived out of state, and child had limited relationship with sibling].)

At the time of the disposition hearing, Sureya was almost six years old. Anwar had not seen her for two years, but Anwar insisted Sureya knew he was her father (and Sureya did not state to the contrary), and Anwar had cared for Sureya when he was living in California. In the jurisdiction report from the 2015 dependency proceeding, Rocio described Anwar as being "really good with the kids."

A child's preference for placement is likewise relevant to a finding of detriment, but not dispositive. (See *In re K.B., supra*, 239 Cal.App.4th at p. 980 [explaining as to placement of child with noncustodial father under section 361.2, subdivision (a), "even if X.B. had expressed an independent, uninfluenced desire to remain with his maternal family, the seven-year-old child's preference is not clear and convincing evidence of emotional detriment"]; see *In re Patrick S., supra,* 218 Cal.App.4th at p. 1265 [that 13-year-old child did not want to live with his father but was "resigned to doing so . . . does not constitute substantial evidence of emotional detriment"]; see *John M., supra,*

141 Cal.App.4th at p. 1570 ["While, at [nearly 14 years of age], he was entitled to have his wishes considered, [the minor] was not entitled to decide where he would be placed."].)

Here, Sureya's counsel stated at the hearing that Sureya was not requesting to be placed with Anwar, but there was no evidence in the record that Sureya did not want to move to Oklahoma or be placed with Anwar. The jurisdiction and disposition report simply stated, "When asked about her father, Sureya was unable to provide a statement."

Similarly, "[s]ibling relationships are clearly a relevant consideration in evaluating a child's emotional well-being" under section 361.2, subdivision (a). (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425-1427 [substantial evidence supported denial of noncustodial parent's request for placement under section 361.2, subdivision (a), where case social worker and children's counselor testified it would be emotionally detrimental to separate the children]; cf. *John M., supra,* 141 Cal.App.4th at p. 1570 [stale evidence concerning a close sibling relationship insufficient to support a finding of detriment].) The juvenile court stated that Sureya did not wish to be separated from her siblings, but there is no evidence in the record showing Sureya had a close relationship with her siblings or that she did not want to be separated from them.

On appeal, the Department urges us in the alternative to affirm the juvenile court's finding of detriment based on Anwar's failure to take steps to resolve the issues that caused him to lose custody of Sureya in 2016. This was not the basis of the juvenile court's ruling, and even if it were, the argument is not persuasive.

21

Section 361.2, subdivision (a), affords a noncustodial "parent, despite earlier shortcomings and mistakes, [who] has stabilized his or her circumstances and may be able to provide a safe home for the child" the opportunity for placement. (*In re Nickolas T., supra,* 217 Cal.App.4th at p. 1506.) "The court may assign such weight to a prior removal order or detriment finding against a noncustodial parent as it considers appropriate in view of the parent's and child's current circumstances. In many cases, . . . the noncustodial parent's history and circumstances will clearly warrant a detriment finding. [Citation.] In other cases, a noncustodial parent, notwithstanding a previous removal order or detriment finding, may have remedied the conditions that led to the prior dependency proceedings, maintained a parental relationship with the child and stabilized his or her circumstances." (*Ibid.*)[11]

The Department is correct the juvenile court removed Sureya from Anwar in 2015 because of his alcohol abuse and

---

[11] The term "'nonoffending'" does not appear in the text of section 361.2, subdivision (a), but some courts nevertheless have recognized "'an implicit nonoffending requirement in section 361.2'" for placement of a child with a noncustodial parents. (See *In re Christopher M., supra,* 228 Cal.App.4th at p. 1317; cf. *Nickolas T., supra,* 217 Cal.App.4th at p. 1506 [rejecting contention that "a parent must be both 'noncustodial' and nonoffending' to be considered for placement under section 361.2"].) We do not read a requirement into section 361.2, subdivision (a), that the parent be nonoffending, but in any event, "a jurisdictional finding based on conduct of a noncustodial parent would unquestionably be a consideration in assessing detriment under section 361.2, subdivision (a)." (*Christopher*, at p. 1317.)

domestic violence against Rocio, and he failed to reunify with Sureya, resulting in the court granting Rocio sole legal and physical custody in 2016.  Although Anwar did not complete his court-ordered counseling and classes in 2016, Anwar subsequently completed a 52-week comprehensive domestic violence program, for which his performance was "outstanding," and the counselor opined Anwar had "mastered [the] positive conflict resolution exercise."  Anwar also submitted evidence he attended thirteen 12-step meetings in September and October 2020.  These efforts belie the Department's position that Anwar had not taken any steps to resolve the issues that caused him to lose custody of Sureya in 2016.

To be sure, Anwar has been far from an ideal parent to Sureya, particularly in his absence in the two years leading up to the disposition hearing during which he was not part of her life. But the essential question in determining placement under section 361.2, subdivision (a), is whether clear and convincing evidence shows placement with a noncustodial parent would be detrimental to the child's safety, protection, or physical or emotional well-being.  Substantial evidence does not support the juvenile court's detriment finding under section 361.2, subdivision (a).

## DISPOSITION

Alex's appeal is dismissed as nonjusticiable.  The juvenile court's finding it would be detrimental to place Sureya with Anwar under section 361.2, subdivision (a), is reversed.  We do not remand for a new section 361.2 hearing because Sureya has since been returned to Rocio's custody.


                                        FEUER, J.

We concur:


        PERLUSS, P. J.


        SEGAL, J.